IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

LUTHER C. BASHAM,                        )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )          Civil Action No. 5:04-1335
                                         )
THOMAS McBRIDE, Warden,                  )
Mount Olive Correctional Complex, *et al.*, )
                                         )
        Defendants.                      )

PROPOSED FINDINGS AND RECOMMENDATION

On June 11, 2004, Plaintiff, acting *pro se* and incarcerated at Mount Olive Correctional Complex [MOCC], Mount Olive, West Virginia, filed his Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983 in the Circuit Court of Kanawha County.[1] (Document No. 1-4.) On December 21, 2004, Defendants timely removed the above action from the Circuit Court of Kanawha County. (Document No. 1.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 5.)

FACTS AND PROCEDURE

Plaintiff alleges that Defendants violated his "First Amendment guarantee of free speech when disciplinary action was taken against him following two telephone calls and conversations he had with his God Daughter in which Plaintiff made various 'unwelcome' and 'unflattering' comments about various persons employed at Mount Olive Correctional Complex." (Document No.

_____

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

1-4.) Plaintiff names the following individuals as Defendants: (1) Thomas L. McBride, Warden of MOCC; (2) Paul Parry, Chief Correctional Officer; (3) Robert Rhodes, Captain; (4) William Kerns, Correctional Magistrate; (5) Sherrie Cox, Information Systems Assistant; (6) John Doe, Employee at MOCC; and (7) Jane Doe, Employee at MOCC.[2] (Id.) Plaintiff requests declaratory and injunctive relief, as well as monetary damages. (Id., pp. 22-25.)

On December 29, 2003, Plaintiff made a telephone call to his God Daughter, Crystal D. Hughes. Plaintiff alleges that his "telephone conversation was a private conversation between Plaintiff and his God Daughter and the things that were said and discussed were between them and no one else." (Id., p. 15.) During the conversation, Plaintiff and his God Daughter discussed a package that had not been delivered to Plaintiff. Plaintiff stated the following concerning the post office staff at MOCC:

> [I]t's either Patricia Hanshaw or Lisa Carte. She probably talked to Patricia. She's an idiot to begin with. As far as she and Lisa are concerned, the sun sets in the South and rises in the North. That is how much of an idiot they are.

(Id., p. 16.) During the same telephone call, Plaintiff also made the following statement concerning the Warden and Lieutenant Joseph Coy: "[T]his idiot warden up here says ahh, he ain't doing nothing, yeah, he and the warden are probably in bed together." (Id.) On January 20, 2004, Plaintiff made another telephone call to his God Daughter. Plaintiff claims that he and his God Daughter discussed "an employee known as 'Crackhead Joe' (aka Joseph B. Coy)." During this conversation, Plaintiff made the remark "that black son-of-a-bitch that's a crack smokin drunk up here, he just got popped again for DUI. He's in detox." (Id., p. 17.)

The above telephone conversations were monitored by the Information Systems Assistant,

---

[2]  Plaintiff has sued all Defendants in their individual capacity.

Sherrie Cox, who heard Plaintiff's defamatory comments concerning prison employees. (Id.) On January 30, 2004, Ms. Cox charged Plaintiff with one Class -I Rule Violation/Infraction (MC-04-0074-K) for Cumulative Class-II Violations, and three Class-II Rule Violations/Infractions (MC-04-0071-K, MC-04-0072-K, and MC-04-0073-K) for the offense of Insubordination in violation of Policy Directive 325.00, Section 2.32. (Id., pp.17-18 and Document No. 1-5, pp. 3-6.) On February 9, 2004, Plaintiff appeared before the MOCC Correctional Magistrate William Kerns for a disciplinary hearing. Plaintiff pled not guilty to the above rule violations. (Document No. 1-4, p. 18.) Plaintiff, and his inmate legal representative, presented the following arguments: (1) Plaintiff did not act insubordinately during his telephone conversation, (2) Plaintiff's comments were not directed to any MOCC employee, and (3) Plaintiff's "constitutional right to free speech, expression and the right to voice an opinion had been violated." (Id., pp. 18-19.) Plaintiff was found guilty of all four rule violations and received a total of 90-days loss of privileges and 90-days of punitive segregation.[3] (Id., p.19 and Document No. 1-5, pp. 8-15.) Plaintiff did not lose any good time credit. (Id.) Plaintiff appealed Magistrate Kern's decision to Warden McBride on February 25, 2004. (Document No. 1-4, p. 20 and Document No. 1-5, pp. 17-19.) On March 25, 2004, Warden McBride found that Plaintiff's First Amendment right to free speech had been violated and ordered that the Class-I Rule Violation/Infraction for Cumulative Class-II Violations (MC-04-0074-K), and two of the Class II Rule Violations/Infractions for the offense of Insubordination (MC-04-0071-K and MC-04-0073-K), be reversed, vacated, and expunged from Plaintiff's record. (Document No. 1-4, p. 20

---

[3]   It appears that Plaintiff received 30-days loss of privileges and 30-days of punitive segregation for each of the three violations of Section 2.32, Insubordination. Plaintiff also received 30-days loss of privileges and 30-days of punitive segregation for the violation of Section 1.14, Cumulative Class II Offense, which was run concurrent with the above sentences. (Document No. 1-5, pp. 8-15.)

and Document No. 1-5, pp. 21-23.) Warden McBride, however, upheld Magistrate Kern's finding of guilt as to the charge of insubordination concerning Lieutenant Coy (MC-04-0074-K). (Id.) Plaintiff appealed to the Commissioner of the Division of Corrections. (Document No. 1-5, pp. 26-31.) On April 21, 2004, Commissioner Rubenstein found that Plaintiff's conviction for insubordination concerning Lieutenant Coy should be upheld. (Document No. 1-4, p. 21 and Document No. 1-5, pp. 33-34.) Plaintiff alleges that the above disciplinary proceedings violated his First Amendment rights to "freedom of speech, expression and the right to voice an opinion."

On December 27, 2005, the Defendants filed a Motion to Dismiss with Memorandum in Support. (Document Nos. 35 and 36.) Defendants contend that Plaintiff's Complaint must be dismissed for the following reasons: (1) Defendants enjoy qualified immunity; and (2) Warden McBride cannot be sued under a theory of *respondeat superior*.(Document No. 36.) Defendants additionally filed a Motion to Stay Discovery (Document No. 37.) pending resolution of the Motion to Dismiss, which the Court granted on January 6, 2006 (Document No. 41.).

On December 29, 2005, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the Defendants' Motion to Dismiss. (Document No. 38.) On January 4, 2006, Plaintiff filed his Response in Opposition to Defendants Motion to Dismiss and Memorandum in Support. (Document Nos. 39 and 40.) Plaintiff argues that Defendants' Motion to Dismiss should be denied because:

> (1) it is frivolous; (2) the defendants do not enjoy nor are they entitled to qualified immunity; (3) Warden Thomas L. McBride can be sued because he is responsible for the conduct and all acts of the employees that work under his direction and supervision, which includes his co-defendants, Paul Perry, Robert Rhodes, William Kerns, and Sherrie Cox; (4) Warden McBride has already admitted to guilt, complicity, and liability in this matter when he sent a letter to the plaintiff admitting that plaintiff's first amendment rights to freedom of speech had been violated (See Plaintiff's Exhibit #1), and (5) there was a violation of a guaranteed constitutional right under the First Amendment of the United States Constitution and the First

Amendment of the Constitution of the State of West Virginia.

(Document No. 40, pp. 6-7.) Plaintiff asserts that he has a First Amendment right to make "unwelcome, unflattering, and derogatory comments to his God-daughter about prison officials and staff that were not directed to or spoken directly to defendant Cox or any prison official or staff member." (Id., p. 11.) Plaintiff contends that he did not violate Policy Directive 325.00, Section 2.32 because he was not speaking directly to a prison official. (Id., p. 12.)

Defendants filed a Reply on January 20, 2006, arguing that Defendants are entitled to qualified immunity because Plaintiff does not have an "absolute right" to freedom of speech, expression, and the right to voice an opinion. (Document No. 48, p. 2.) Specifically, Defendants state that "plaintiff fails to demonstrate that the defendants violated a constitutional right that was clearly established – namely, the right to engage in insubordinate, insolent, and slanderous speech." (Id., p. 3.) Defendants contend that Plaintiff was disciplined for making derogatory comments about prison officials in a telephonic conversation that he knew was being monitored and "such discipline is permissible to further the interest of order, security, and rehabilitation in the prison." (Id., p. 4.)

## THE STANDARD

The Fourth Circuit Court of Appeals stated the standard for considering a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in a § 1983 case as follows in Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989):

> In actions under 42 U.S.C. § 1983, as generally, a motion to dismiss pursuant to Rule 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts to support [his] allegations. (Citations omitted). As the United States Supreme Court has stated in another § 1983 case.
>
> > [w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

> evidence to support the claims. Indeed it may appear on the face of
> the pleadings that a recovery is very remote and unlikely but that is
> not the test. Moreover, it is well established that, in passing on a
> motion to dismiss . . . for failure to state a cause of action, the
> allegations of the complaint should be construed favorably to the
> pleader.

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Dismissal is therefore proper under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*per curiam*)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.) Thus, where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## **DISCUSSION**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act

which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

## I.      Qualified Immunity.

Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Federal officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996). In Harlow, the Court stated that once a defendant affirmatively pleads the defense of qualified immunity, the trial judge may determine

> not only the currently applicable law, but whether that law was clearly established
> at the time an action occurred. If the law at that time was not clearly established, an
> official could not reasonably be expected to anticipate subsequent legal
> developments, nor could he fairly be said to 'know' that the law forbade conduct not
> previously identified as unlawful.

Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. In a case in which the defense of qualified immunity is raised, the Court looks to the evidence before it in the light most favorable to the plaintiff when conducting its inquiry of whether the defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. Behrens v. Pelletier, 516 U.S. 299, 309, 116 S.Ct. 834, 840, 133 L.Ed.2d 773 (1996). The District Court must determine first whether "particular conduct occurred," and second, "whether uncontroverted conduct represented

7

the [violation of a constitutional right]." <u>Elliott v. Leavitt</u>, 99 F.3d 640, 644 (4th Cir. 1996), *reh'g*

*en banc denied*, 105 F.3d 174 (1997). Only if the Court determines that the plaintiff alleges the

violation of a clearly established constitutional right does the Court then proceed to determine

whether a reasonable person in the defendants' position should have known that their conduct was

illegal. <u>Id.</u>; <u>Leverette v. Bell</u>, 247 F.3d 160, 166 (4th Cir. 2001), *cert. denied*, 534 U.S. 993, 122

S.Ct. 460, 151 L.Ed.2d 378 (2001)(The Fourth Circuit follows a two-step sequential analysis for

determining the validity of a qualified immunity defense: (1) the Court must determine whether the

facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual

constitutional right; and, if so, (2) the Court then proceeds to consider whether that right was clearly

established at the time of the purported violation.); <u>Pittman v. Nelms</u>, 87 F.3d 116, 199 (4th Cir.

1996); <u>DiMeglio v. Haines</u>, 45 F.3d 790, 795 (4th Cir. 1995).

> The responsibility imposed on public officials to comply with constitutional
> requirements is commensurate with the legal knowledge of an objectively reasonable
> official in similar circumstances at the time of the challenged conduct. It is not
> measured by the collective hindsight of skilled lawyers and learned judges. * * *
> "Officials are not liable for bad guesses in gray areas; they are liable for
> transgressing bright lines." <u>Maciariello v. Sumner</u>, 973 F.2d 295, 298 (4th Cir.
> 1992), <u>cert. denied</u>, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993).

<u>Jackson v. Long</u>, 102 F.3d 722, 730-31 (4th Cir. 1996); <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105

S.Ct. 2806, 86 L.Ed.2d 411 (1985)(noting that qualified immunity is "an *immunity from suit* rather

than a mere defense to liability" and "such pretrial matters as discovery are to be avoided if

possible[.]" (Emphasis in opinion.)).

### A.    First Amendment Right to Freedom of Speech:

The lawful incarceration of an individual necessarily results in the limitation of many rights

and privileges that the individual once enjoyed. A prisoner "retains those First Amendment rights

not inconsistent with his status as a prisoner or with the legitimate penological objectives of the

corrections system." <u>Pell v. Procunier</u>, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Legitimate penological objectives include deterrence of crime, rehabilitation, and preservation of internal security. <u>Id.</u> at 822-23, 94 S.Ct. at 2804. For example, in <u>Procunier v. Martinez</u>, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Supreme Court held that censorship of prison mail is justified if (1) the challenged regulation or practice furthers an important or substantial government interest unrelated to the suppression of expression; and (2) the challenged regulation or practice only restricts the First Amendment freedoms no more than necessary to protect the government interest involved. <u>See</u> <u>Thornburgh v. Abbott</u>, 490 U.S.401, 411-14, 109 S.Ct. 1874, 1880-82, 104 L.Ed.2d 459 (1989)(limiting *Martinez's* strict scrutiny analysis to outgoing prison mail).[4]

Prison officials may not censor any correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. <u>Thornburgh</u>, 490 U.S. at 423, 109 S.Ct. at 1887( *citing* <u>Martinez</u>, 416 U.S. at 412, 94 S.Ct. at 1811). Censorship for the violation of prison disciplinary rules should be properly limited to communications that relate to more concrete violations such as "escape plans, plans for disruption of prison system or work routine, or plans for the importation for contraband." <u>McNamara v. Moody</u>, 606 F.2d 621 (5th Cir. 1979), *cert. denied* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980)(holding that disciplinary action brought against inmate violated his First Amendment rights because "coarse and offensive remarks are not inherently breaches of discipline and security, nor is there any showing that they will necessarily

---

[4] In *Thornburgh*, the Court held as follows: "We now hold that regulations affecting the sending of a 'publication' to a prisoner must be analyzed under the Turner reasonableness standard. Such regulations are 'valid if [they are] reasonably related to legitimate penological interests'. ... Furthermore, we acknowledge today that the logic of our analyses in *Martinez* and *Turner* requires that <u>Martinez</u> be limited to regulations concerning outgoing correspondences."

lead to the breaking down of security or discipline.") Thus, prison officials may not punish a prisoner for written statements made to a non-prisoner, even if the same statements would be grounds for disciplinary action if made verbally to a prison official. McNamara, 606 F.2d at 621(the prisoner wrote a letter to his girlfriend where he accused a prison guard of bestiality); See also Osterback v. Ingram, 2000 WL 297840, *8 (N.D. Fla. 2000)(denying qualified immunity because plaintiff's comments in his letter, while vulgar and offense, did not implicate legitimate security concerns);[5] Bressman v. Farrier, 825 F. Supp. 231, 234 (N.D. Iowa 1993)(the disciplining of an inmate for offensive comments made about prison staff in a letter to inmate's brother violated the First Amendment);[6] Loggins v. Delo, 999 F.2d 364 (8th Cir. 1993)(prison officials could not discipline inmate for writing a letter to his brother, which contained derogatory and insulting remarks about a prison official even though the inmate knew the letter might be read by prison officials); Brooks v. Andolina, 826 F.2d 1266, 1268 (3rd Cir. 1987)(disciplining an inmate for his statements about a correctional officer in a letter to the NAACP violates the First Amendment).

On the other hand, prisoners have no First Amendment "right to address prison officials in a disrespectful or abusive manner, or to engage in other forms of protest which impose clear and present danger of disorder and violence." Scarpa v. Ponte, 638 F. Supp. 1019, 1028 (D. Mass. 1986)(citing Savage v. Snow, 575 F. Supp. 828, 836 (S.D.N.Y. 1983); see also Goff v. Dailey, 991

---

[5] Prisoner's letter dated May 28, 1996, contained the following: "[T]hat mailroom bitch has a hard-on for me ... Frieda, that's her name ... Frieda the Fascist ..."; "f---ing Nazi ultraconservative bastards"; "everyone has to be something in life, even if it's an asshole. I think that's why they all wear brown, it camouflages the fact that most of them are just assholes in disguise." Osterback, 2000 WL 297840, * 4.

[6] Prisoner's letter to his brother stated the following: "[Y]eah, their (sic) real assholes, my counselor is a dick head, the officers working here are punks, the ladies in the mail room are bitches, now I hope they all read this letter and get their kicks off of it." Bressman, 825 F. Supp. at 232.

F.2d 1437 (8th Cir. 1993)(holding that an inmate was not deprived of his First Amendment rights when he was disciplined for making crude personal statements about a correctional officer in the presences of several other prisoners.) Accordingly, disciplinary measures taken to preserve the prison's security interest will not offend the First Amendment if a prisoner, under the pretext of a legitimate personal correspondence, uses outgoing mail as a means to verbally abuse prison staff without incurring disciplinary consequences. Leonard v. Nix, 55 F.3d 370, 375-76 (8th Cir. 1995). The Court reasoned that prisoners could be punished for derogatory comments clearly directed at and meant to be read by prison employees. Leonard, 55 F.3d at 371(plaintiff's letter stated "They really got pissed off for me calling him [the Warden] a n-----. Ha. That's why I'm putting it in this letter so many times.")[7]; see also Carroll v. Tucker, 17 Fed. Appx. 392 (7th Cir. 2001)(plaintiff wrote the following "Since the nosy fags in the mail room are reading my mail...all I can say is to deal with a different company that these assholes can verify is legit! ... Since I got a ticket for stating in one of my letters Assistance Asshole N----- Warden Hinsley I though I would say it again. One more time: Assistance Asshole N----- Warden Hinsley. Now issue two more tickets you nosy assholes reading my mail."). A prisoner, however, cannot be punished merely because he is aware that his mail may be read by prison officials. Bressman, 825 F. Supp. at 234.

    **(i)**      **Whether a constitutional violation occurred?**

Having considered Plaintiff's claims in the light most favorable to the Plaintiff and applying the reasoning of the Courts in the above cited cases, the undersigned finds that Plaintiff alleges a cognizable First Amendment claim. Based upon two verbal telephonic conversations between

---

[7] The Plaintiff went on to write that "I want you to know that they are going to copy this letter also but I really don't give a f---. I stand beside the 1st Amendment. I can say anything I want about this motherf---ing n---- and he can't do a f---ing thing about it. Ha." *Leonard*, 55 F.3d at 375.

Plaintiff and his God daughter in December, 2003, and January, 2004, in which Plaintiff made derogatory and offensive comments about prison officials.[8] Defendants charged Plaintiff with violating Policy Directive 325.00, Section 2.32, which provides as follows:

> **Insubordination/Insolence:** An inmate shall not be insubordinate or insolent to a staff person. No inmate shall slander any person.

Having been found guilty of the charge, Plaintiff was placed in punitive segregation for 90 days and lost privileges for 90 days.[9]

Although Plaintiff's comments are extremely offensive, they do not implicate legitimate security concerns. Plaintiff's comments do not concern or insinuate "escape plans, plans for disruption of prison system or work routine, or plans for the importation for contraband." There is no direct or indirect indication that Plaintiff was intending violence or a confrontation with respect

---

[8] On December 29, 2003, Plaintiff made the following comments to his God daughter:

> It's either Patricia Hanshaw or Lisa Carte. She probably talked to Patricia. She's an idiot to begin with. As far as she and Lisa are concerned, the sun sets in the South and rises in the North. That is how much of an idiot they are. ... [T]his idiot warden up here says ahh, he ain't doing nothing, yeah, he and the warden are probably in bed together.

(Document No. 1-4, p. 16.) On January 20, 2004, Plaintiff made the following remark concerning Lieutenant Joseph Coy:

> [T]hat black son-of-a-bitch that's a crack smokin drunk up here, he just got popped again for DUI. He's in detox.

(Id., p. 17.)

[9] The Court notes that Plaintiff was convicted of four rule violations based upon comments made to his God Daughter during the telephone conversations. Warden McBride, however, overturned Plaintiff's conviction as to three of the rule violations. Plaintiff appears to be arguing that he received punishment based upon all four rule infractions because he had already served 45 days in segregation when Warden McBride overturned the three convictions. (Plaintiff was sentenced to 30 days in segregation for each charge of insubordination.)

to the prison officials he spoke about to his God daughter. Defendants maintain that an inmate has no absolute right to engage in insubordinate speech and "allowing inmates to direct abusive comments toward prison officials undermines discipline in prisons." Defendants cite <u>Ustrak v. Fairman</u>, 781 F.2d 573, 580 (7th Cir. 1986), as controlling authority. In <u>Ustrak</u>, the Court determined that the prisoner's First Amendment rights were not violated when the inmate was disciplined for writing a letter in which he called prison employees "stupid lazy assholes" and challenged them to "bring their fat asses around the gallery at night." <u>Ustrak</u>, 781 F.2d at 580. Similar to <u>Leonard</u> and <u>Carroll</u>, the inmate in <u>Ustrak</u> used outgoing mail, under the pretext of legitimate personal correspondence, as a means to verbally abuse and challenge prison staff without incurring disciplinary consequence. <u>Leonard</u>, 55 F.3d at 371; <u>Carroll</u>, 17 Fed. Appx. 392. Based upon the Court's review of the record, there is no evidence that Plaintiff's comments were directed to or intended to be overheard by prison employees.[10] Defendants only allege that Plaintiff made the comments knowing that his telephonic conversations were being monitored. A prisoner, however, may not be punished for comments he makes to a non-prisoner merely because he is aware that his communication may be monitored. <u>See</u> <u>Bressman</u>, 825 F. Supp. at 234. Therefore, the undersigned finds that Plaintiff's verbal telephonic conversations with his God daughter were protected under the First Amendment of the United States Constitution and Defendants' charging and punishing him for the offensive comments which he made to his God Daughter about prison officials during the two telephonic conversations was improper.

---

[10]   The undersigned notes that the instant case differs from Plaintiff's other action in this Court. *Basham v. Rubenstein*, Civil Action No. 5:06-0713. In *Basham v. Rubenstein*, the Court held Plaintiff was not deprived of his First Amendment rights when he was disciplined for sending a letter containing insubordinate material directly to a prison official.

**(ii)      Whether the constitutional right was clearly established?**

Having found that Plaintiff's First Amendment right was evidently violated, the Court must proceed to the second inquiry to determine whether qualified immunity is appropriate – namely, whether the right was clearly established. A law is clearly established when it has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state in which the action arose. Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999). The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted. Saucier v. Katz, 533 U.S. 194, 195, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2002). The determination "is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances." Wilson v. Kittoe, 337 F.3d 392, 402 (4th Cir. 2003). "Clearly established" does not mean that "the very action in question has previously been held unlawful," but requires the unlawfulness of the officer's conduct to be apparent "in the light of pre-existing law." Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Thus, "the exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established." Amaechi v. West, 237 F.3d 356, 362 (4th Cir. 2001). Furthermore, qualified immunity is not guarantee by the lack of controlling authority holding identical conduct unlawful. See Kittoe, 337 F.3d at 403.

For the purpose of this analysis, the question is whether prior to December 2003, an inmate's First Amendment right to make an offensive, but not security-threatening, statement to a non-prisoner during a telephonic conversation was so clearly established that it should have been obvious to a reasonable prison official that punishing the inmate for such comments violated federal law. The undersigned finds that such a right was clearly established well before 2003, and Defendants are not

14

entitled to qualified immunity. The law concerning outgoing prisoner communications by mail was clearly established in <u>Martinez</u>, and has not significantly changed in nearly 30 years. <u>See</u> <u>Thornburgh</u>, 490 U.S. at 411-13, 109 S.Ct. at 1880-81(limited <u>Martinez's</u> strict scrutiny analysis to outgoing prison mail). Defendants argue that the Court in <u>Martinez</u> "refused to clearly identify the boundaries of the limitation on First Amendment freedoms because it was not their 'purpose to survey the range of circumstances in which particular restrictions on prisoner mail might be warranted by the legitimate demands of prison administration as they exist from time to time in the various kinds of penal institutions found in this country.'" (Document No. 48, p. 3.) It is well established, however, among the federal circuit courts that prison officials "may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. <u>Travis v. Norris</u>, 805 F.2d 806, 808 (8th Cir. 1986)(<i>quoting</i> <u>Martinez</u>, 417 U.S. at 822, 94 S.Ct. at 2804); <u>see</u> <u>also</u> <u>Osterback</u>, 2000 WL 297840, *6-9;[11] <u>Bressman</u>, 825 F. Supp. at 235;[12] <u>Brooks</u>, 826 F.2d at 1267-69; <u>McNamara</u>, 606 F.2d 625-26. Although the present action deals with telephonic communications, instead of written communications, the undersigned finds that the same law applies. Accordingly, the Court concludes that the law was clearly established and qualified immunity is not available to Defendants for disciplinary actions imposed against Plaintiff in violation of his First Amendment right.

### B.    Right to Privacy:

The Fourth Amendment of the United States Constitution provides that "[t]he right of the

---

[11]  The inmate was awarded nominal damages of one dollar ($1.00) for his placement in disciplinary confinement in violation of his First Amendment rights. <u>Osterback</u>, 2000 WL 297840, *11.

[12]  The inmate was awarded damages of forty ($40.00) dollars for each day served in solitary confinement. <u>Bressman</u>, 825 F. Supp. at 238.

people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." Bell v. Wolfish, 441 U.S. 520, 560, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979). In order to establish a Fourth Amendment violation, an individual must show that he or she had a constitutionally protected reasonable expectation of privacy. A constitutionally protected reasonable expectation of privacy exists if the individual (1) has an actual subjective expectation of privacy, and (2) society is objectively prepared to recognize that expectation. See United States v. Meriwether, 917 F.2d 955, 958 (6th Cir. 1990). Although prisoners do not forfeit all their privacy rights at the jailhouse steps, their privacy rights are severely curtailed. In Hudson v. Palmer, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984), the Court stated as follows:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that '[l]oss of freedom of choice and privacy are inherent incidents of confinement.' Bell v. Wolfish, 441 U.S. at 537, 99 S.Ct. at 1873.

Hudson, 468 U.S. at 526-27, 104 S.Ct. at 3200. It is widely recognized that the monitoring of prisoners' telephone communications does not violate the Fourth Amendment because prisoners have no reasonable expectation of privacy. United States v. Balon, 384 F.3d 38 (2nd Cir. 2004); United States v. Van Poyck, 77 F.3d 285, 290-91 (9th Cir. 1996). Even assuming a prisoner has a reasonable expectation of privacy in a telephone communication, the monitoring of the communication is reasonable under the Fourth Amendment based upon institutional security concerns. Van Poyck, 77 F.3d. at 291; United States v. Amen, 831 F.2d 373, 379 (2nd Cir. 1987), cert. denied, 485 U.S. 1021, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988)(upholding routine recordings of prison phones for institutional security concerns). Furthermore, as long as a prisoner is provided

16

notice that his communication is being monitored, the prisoner is deemed to have consented to monitoring as a condition of using prison telephones. See United States v. Hammond, 286 F.3d 189, 192 (4th Cir. 2002); United States v. Workman, 80 F.3d 688, 693 (2nd Cir. 1996).

Based on the foregoing, the undersigned finds that Plaintiff had no constitutional right to privacy in his telephonic communication. Further, Plaintiff cannot show that any right to privacy was "clearly established." The undersigned notes that the West Virginia Supreme Court expressly authorized the monitoring of all non-privileged prisoner telephone calls under the authority contained in West Virginia Code § 25-1-17 (1990). See Crain v. Bordenkircher, 191 W. Va. 343, 445 S.E.2d 730 (1994). Accordingly, Defendants' qualified immunity defense is meritorious to the extent that Plaintiff is claiming Defendants violated his right to privacy.[13]

## II.   *Respondeat Superior*:

Plaintiff alleges that "[t]he failure of defendant Thomas L. McBride to take disciplinary action to curb the known pattern of practice being displayed by Defendants Rhodes, Kerns and Cox constituted deliberate indifference and contributed to and proximately caused the above violation of Plaintiff's First Amendment's guarantee and right to free speech." (Document No. 1-4, p. 9.) Plaintiff further argues that Defendant McBride is liable under the doctrine of *respondeat superior* because as the Warden of MOCC, "he is clearly, legally responsible for the conduct and acts of those who are employed to work under his direction and supervision, which includes his codefendants which makes him legally liable for whatever ill acts they commit." (Document No. 40, p. 12.)

Liability under the doctrine of *respondeat superior* is generally inapplicable to actions

---

[13] Although Plaintiff's Complaint alleges that the telephonic communication with his God Daughter was private, Plaintiff contends that he is not alleging a privacy claim. (Document No. 40, p. 10.)

17

arising under 42 U.S.C. § 1983. See Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Based upon a full examination of the record, the undersigned finds that it is not evident that Defendant McBride's conduct directly caused the circumstances about which Plaintiff complains or that Defendant McBride was indifferent to or tacitly authorized the conduct of subordinates. Rather, upon receiving Plaintiff's appeal of Magistrate Kern's decision, Defendant McBride overturned three of the four rule violations by finding that Plaintiff's First Amendment rights had been violated. (Document No. 1-5, pp. 21-23.) Accordingly, Defendant McBride is not liable under the doctrine of *respondeat superior* because there is no evidence that Defendant McBride "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm."

## PROPOSAL AND RECOMMENDATION

The undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept

the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss (Document No. 35) as to Defendant McBride, **DENY** Defendants' Motion to Dismiss as to all other Defendants, and refer this matter back to the undersigned for the scheduling of further proceedings.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have thirteen days from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*, and provide a copy to counsel of record.

Date: May 16, 2008.

R. Clarke VanDervort
United States Magistrate Judge

19