## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

LUTHER C. BASHAM,

          Plaintiff,

v.                                    CIVIL ACTION NO.  5:04-cv-01335

THOMAS L. MCBRIDE, et al.,

          Defendants.

### MEMORANDUM OPINION AND ORDER

Plaintiff, *pro se*, an inmate at the Mount Olive Correctional Complex (MOCC) in Mount Olive, West Virginia, brings this action against various prison officials pursuant to 42 U.S.C. § 1983. Plaintiff claims that the prison officials violated his constitutional rights when they disciplined him based on comments he made to a family friend during two telephone conversations at MOCC.

By Standing Order entered on July 21, 2004, and filed in this case on December 22, 2004, this action was referred to United States Magistrate Judge Mary E. Stanley for submission of proposed findings and a recommendation (PF&R). On December 28, 2004, that reference was withdrawn and the case was referred to United States Magistrate Judge R. Clarke VanDervort. Magistrate Judge VanDervort filed a PF&R on May 16, 2008 [Docket 63]. In that filing, the magistrate judge recommended that this Court grant Defendants' motion to dismiss Defendant McBride, deny Defendants' motion to dismiss as to all the other Defendants, and refer this matter back to him for the scheduling of further proceedings. For the reasons stated below, the Court adopts the magistrate judge's recommendations.

## *I. THE PF&R*

The factual allegations and procedural history of this matter are set forth in the PF&R and the Court **ADOPTS** those without further recitation.

After detailing Plaintiff's allegations and the applicable law, Magistrate Judge VanDervort recommended that this Court dismiss Defendant McBride because "it is not evident that [his] conduct directly caused the circumstances about which Plaintiff complains or that Defendant McBride was indifferent to or tacitly authorized the conduct of subordinates." (Docket 63 at 18.) Similarly, the magistrate judge recommended that Plaintiff's right to privacy claim be dismissed because "Plaintiff had no constitutional right to privacy in his telephonic communication." (*Id*. at 17.) The magistrate judge then recommended that this Court deny the other Defendants' motion to dismiss because (1) Plaintiff's verbal telephonic conversations with his family friend were protected under the First Amendment; and (2) under clearly established law, qualified immunity is not available to Defendants for the disciplinary actions imposed against Plaintiff. (*See id.* at 13, 15.)

Given those recommendations, the magistrate judge indicated that the case should be re-referred for entry of a scheduling order and a trial date.

## *II. STANDARD OF REVIEW*

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections

that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Here, pursuant to the Court's Order entered on May 23, 2008, objections to Magistrate Judge VanDervort's PF&R were due by June 18, 2008.[1] Plaintiff filed timely objections on May 29, 2008, and Defendants filed their response and objections on June 12, 2008. Plaintiff replied on June 25, 2008.

When reviewing portions of the PF&R *de novo*, the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978). Under this liberal standard, however, a complaint may still be dismissed "if it is clear that no relief could be granted *under any set of facts that could be proved consistent with the allegations.*" *Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 170 (4th Cir. 2007) (emphasis in original) (citation omitted). Plaintiff must provide sufficient factual allegations "to raise a right to relief above the speculative level[,]" and must "nudge" his claim "across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965, 1974 (2007).

---

[1] The Court notes that on June 5, 2008, Plaintiff filed a Motion for a Temporary Restraining Order and Order to Show Cause [Docket 69]. In that motion, Plaintiff alleges that the warden of MOCC has prevented him and the other inmates from accessing the law library. On June 9, 2008, Magistrate Judge VanDervort docketed another civil action in this Court based on that motion. *See Basham v. Ballard*, 5:08-cv-822 (S.D. W. Va. June 9, 2008). Because Magistrate Judge VanDervort will make another recommendation on that issue in a separate case, Plaintiff's motion is **DENIED WITHOUT PREJUDICE**. It appears that the warden's actions have not prevented Plaintiff from either filing his objections or drafting a Motion for Summary Judgment [Docket 71]. Nevertheless, the Court will monitor this situation as the litigation proceeds.

### *III. DISCUSSION*

*A.     Plaintiff's Objections*

Plaintiff does not object to the magistrate judge's dismissal of Defendant McBride.  Rather, Plaintiff requests that the "Office of the Warden" be substituted instead.  Because there is no legal basis to hold the "Office of the Warden" liable for an alleged violation of Plaintiff's first amendment rights, the Court denies his request.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) ("We have set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.").  To the extent Plaintiff moves to amend his complaint, the Court **FINDS** that an amendment would be futile and any such motion is **DENIED**.  *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).  Moreover, the Court notes that Plaintiff does not object to the recommended dismissal of his right to privacy claim.

Accordingly, the Court **ADOPTS** the recommendations to dismiss Defendant McBride and Plaintiff's right to privacy claim.

*B.     Defendants' Response*

The remaining Defendants object to the recommendation to deny their motion to dismiss and request that the Court reconsider the issue of whether Defendants "enjoy qualified immunity as to [P]laintiff's claim of violation of his freedom of speech."  (Docket 74 at 4.)  Defendants assert that

Plaintiff was properly disciplined for his comments because they were in violation of Policy Directive 325.00, § 2.32: "No inmate shall slander any person."[2]

According to Defendants, Plaintiff does not enjoy a right to engage in insubordinate, insolent, and slanderous speech. They assert that this case is different from *Bressman v. Farrier*, 825 F. Supp. 231 (N.D. Iowa 1993) -- a cases relied upon by the magistrate judge -- because here there is a disciplinary rule that prohibits the statements Plaintiff made. Defendants' position is that unlike the rule in *Bressman*, the regulation at MOCC prohibited Plaintiff's slanderous speech, regardless of to whom it was made. Additionally, Defendants contend that the magistrate judge incorrectly focused his inquiry on whether Plaintiff's comments implicated legitimate security concerns. Instead, Defendants suggest that the focus should have been on whether the restriction furthers the "interests of order or rehabilitation." (Docket 74 at 7.)

Finally, Defendants argue that because the civil justice system provides for a cause of action for slander, courts should not permit an inmate "to engage in unchecked insolent and slanderous speech regarding prison officials simply because they are made to 'outsiders' and expect it not to affect the order and operation of the correctional institution." (*Id*. at 8.) Simply put, Defendants argument is that because the First Amendment does not protect defamation, prison officials can punish inmates for such speech.[3]

---

[2] Defendants indicate that Plaintiff's comments were slanderous because "[h]e accused a staff member of smoking crack; he stated that the Warden was engaged in a scheme of corruption and cover-up; and he charged two other staff members of tampering with the United States Mail." (Docket 74 at 7.)

[3] The Court notes that Defendants do not cite any case law to support their assertion that a prison can enact a rule that prohibits an inmate from slandering a prison official in communications the inmate has with an individual outside the prison.

### 1. *Applicable Law*

"Under 42 U.S.C. § 1983, a plaintiff must establish three elements to state a cause of action: (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). In order to prevail on a First Amendment retaliation claim, three elements must be proven: "First, the plaintiff must demonstrate that his or her speech was protected. Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action." *Id.* at 686.

However, even if plaintiff establishes those elements, defendants are entitled to qualified immunity if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In dealing with the question of qualified immunity, the Fourth Circuit conducts "a two-step, sequential analysis." *Leverette v. Bell*, 247 F.3d 160, 166 (4th Cir. 2001). First, the court determines "whether the facts, viewed in the light most favorable to [the plaintiff], establish the deprivation of an actual constitutional right." *Id*. If so, the court considers "whether that right was clearly established at the time of the purported violation." *Id*.

Thus, the issue is whether, on the date Plaintiff was disciplined for his speech, it was clearly established that it was a constitutional violation for prison officials to punish an inmate for comments they considered slanderous made about a prison guard to an individual outside the prison.

The Supreme Court has explicitly held that such speech cannot be regulated. *Procunier v. Martinez*, 416 U.S. 396, 419 (1974).[4] In *Martinez*, the Supreme Court included defamatory comments among the types of speech prison officials could not regulate in outgoing communications. *Id*. at 415-16. The Court affirmed the district court's decision to invalidate regulations that "authorized, *inter alia*, censorship of . . . matter deemed '*defamatory*' or 'otherwise inappropriate[]'" because the regulations "invited prison officials and employees to apply their own personal prejudices and opinions as standards for prisoner mail censorship." *Id*. (emphasis added).

Interpreting *Martinez*, several other courts have also held that prison officials may not discipline an inmate for defamatory or factually inaccurate statements about prison officials to third-parties. For example, in *McNamara v. Moody*, 606 F.2d 621, 624 (5th Cir. 1979), the court stated:

> Even if [the prisoner's letter] is libelous, *[Procunier v.] Martinez,* 416 U.S. 396, 415-16 (1974) indicates that letters may not be suppressed simply because they are 'defamatory'. Here again there must be some relation to a substantial governmental interest, and the [defendant] has advanced no such interest here. If the warden's purpose is to prevent strongly worded and exaggerated criticism of prison officials from reaching the public, this is precisely the sort of purpose ruled impermissible by *Martinez*.[5]

---

[4] Although the Supreme Court has limited the reach of *Martinez* in subsequent cases such as *Turner v. Safley*, 482 U.S. 78, 89 (1987) and *Thornburgh v. Abbott*, 490 U.S. 401, 416 (1989), "these limitations relate to the standard of review only. The Court has never repudiated [*Martinez*'s] holding that prison officials may not censor speech simply because they deem it to be 'inflammatory'" or defamatory. *See Johnson v. Raemisch*, No. 07-cv-390-bbc, 2008 U.S. Dist. LEXIS 41361, at *21 (W.D. Wis. May 23, 2008).

[5] Despite the fact that the court in *McNamara* addresses censorship in the form of suppression of
(continued...)

While the Fifth Circuit's decision in *McNamara* is not controlling, the Fourth Circuit cited *McNamara* with approval in *Ross v. Reed*, 719 F.2d 689, 695 (4th Cir. 1983). In *Ross*, the Fourth Circuit used *McNamara* to support the proposition that "a prison guard who engaged in censorship was held not entitled to qualified immunity." *See also Brooks v. Andolina*, 826 F.2d 1266, 1268 (3d Cir. 1987). Importantly, in *Ross*, the court noted that: "the law was clear [in late 1979-early 1980] that prison authorities could not as a regular practice censor inmate mail, even if the letter unduly complains or magnifies grievances or is *defamatory*; rather, as was clear, censorship -- and other restrictions on inmates' first amendment rights -- must be justified by using narrowly drawn means to further substantial governmental interests in security, rehabilitation, and order." *Id*. at 695 (emphasis added); *see also Burke v. Levi*, 391 F. Supp. 186, 190 (E.D. Va. 1975), *vacated on other grounds*, 530 F.2d 967 (4th Cir. 1975) ("the Court finds that the criteria enumerated in . . . *Martinez* . . . are met with the exception of that part of [the prison regulation] which permits the screening of incoming and outgoing mail for '(contents) which suggest . . . false, malicious, libelous or confidential information about individual inmates, government officials, and others.'"); *Bressman v. Farrier*, 825 F. Supp. 231, 233 (N.D. Iowa 1993) (quoting *Travis v. Norris*, 805 F.2d 806, 808 (8th Cir. 1986) ("It is well-established in the Eighth Circuit and elsewhere that prison officials 'may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements.'"); *Osterback v. Ingram*, No. 3:96-cv-580, 1999 U.S. Dist. LEXIS 20944, at *13-30 (N.D. Fla. Oct. 25, 1999) (concluding that suppression of an inmate's letters was

---

[5](...continued)
an inmate's letters, the analysis is the same in cases where an inmate is disciplined for his speech. *Brooks v. Andolina*, 826 F.2d 1266, 1268 (3d Cir. 1987) ("If prison officials cannot censor unflattering statements made in letters to outsiders, they also may not punish an inmate for the contents of such letters.").

violative of the First Amendment and defendants were not entitled to qualified immunity when the letters were addressed to a former inmate and read "that mailroom bitch . . . Frieda, that's her name . . . Frieda the Fascist . . ."; "Nazi ultraconservative bastards").

Based on these cases, it was clearly established within the Fourth Circuit in late 1979-early 1980 that prison authorities could not punish an inmate for communications he had with outsiders even if those communications were considered defamatory.

### 2. *Analysis*

In this case, it is clear that Defendants punished Plaintiff for his comments that they determined to be slanderous.[6] Initially, the Court finds that there is no difference between an outgoing letter and a telephone call with an individual outside the prison. A phone conversation is for all relevant purposes the same as "correspondence." *See Martinez*, 416 U.S. at 413 ("Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements.").

Defendants' argument that MOCC had a rule in place to prevent slanderous statements is unavailing. Despite Defendants' argument that this situation is different than the cases cited in the PF&R, it is of no consequence that MOCC had a rule in effect that prohibited slanderous speech because the regulation and practice that was invalidated in *Martinez* also prohibited defamatory comments. *Id.* at 400, 415 ("Rule 2402 (8) provided that inmates 'may not send or receive letters that pertain to criminal activity; are lewd, obscene, or defamatory . . .'"; "the mailroom sergeant stated in a deposition that he would reject as 'defamatory' letters 'belittling staff or our judicial

---

[6] For purposes of this analysis, slanderous speech and defamatory comments are, legally, the same.

system . . . ."). Simply having a different regulation in place does not abrogate the Supreme Court's language in *Martinez*. Additionally, there is no indication that in the other cases addressing this issue, a similar rule would have made the disciplinary action or unconstitutional censorship permissible.

Additionally, Defendants argue that the magistrate judge only addressed the goal of prison security and not order and rehabilitation as justification for the rule prohibiting slander. However, as the Court held in *Martinez*, there does not appear to be any contribution to the rehabilitation of criminals by suppressing and punishing factually inaccurate statements made to outsiders. *Martinez*, 416 U.S. at 416. In fact, as mentioned above, in *Martinez*, the regulation and practice of censoring defamatory material was determined to be inappropriate.[7] *Id*. at 400, 415. The Court determined that the prison's policy was "far broader than any legitimate interest of penal administration." *Id*. at 416.

Finally, in order to establish a claim for retaliation for exercising an individual's rights under the First Amendment, a plaintiff must show that the speech at issue is protected. However, the Supreme Court has held (1) the First Amendment does not protect defamatory comments, *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245-46 (2002);[8] and (2) under the First Amendment prison

---

[7] Defendants' argument also presumes that Plaintiff's comments were slanderous. The Court makes no determination on that issue, but notes that in *Martinez*, the Supreme Court was concerned that allowing prison officials to censor material considered defamatory "invited prison officials and employees to apply their own personal prejudices and opinions as standards for prisoner mail censorship." 416 U.S. at 415. Perhaps a prison official's remedy in a case where an inmate makes a comment that can be considered slanderous is a civil suit against that inmate.

[8] *See also Doe v. Perry Cmty. Sch. Dist.*, 316 F. Supp. 2d 809, 822 (S.D. Iowa 2004) (quoting *Free Speech Coal.*, 535 U.S. at 245-46 ("[T]he First Amendment does not protect 'certain categories of speech including defamation, incitement, obscenity, and pornography produced with real children.'"
(continued...)

officials may not prohibit defamatory comments made in outgoing correspondence (or phone calls), *Martinez*, 416 U.S. at 416.

Despite this apparent paradox, the general proposition that the First Amendment does not protect defamatory speech was established prior to the Supreme Court's holding in *Martinez* and yet the Court still decided to include defamatory comments among the group of speech prison officials could not regulate. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) ("There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words . . . ."). Thus, as applied in the prison setting, there is an exception to the general rule that the First Amendment is inapplicable to defamatory statements. For whatever reason, the Court carved out an exception for such comments. The Court could have easily excluded that category of speech from its list in *Martinez*, especially since it had previously noted that such speech was not subject to the protections of the First Amendment. *Chaplinsky*, 315 U.S. at 571-72; *see also Beauharnais v. Illinois*, 343 U.S. 250 (1952).

---

[8](...continued)
)); *Felton v. Griffin*, 185 F. App'x 700, 701 (9th Cir. 2006) ("The First Amendment does not protect slander."); *Brooks v. N.C. Dep't of Corr.*, 984 F. Supp. 940, 952 (E.D.N.C. 1997) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942)) ("'[C]ertain well-defined and narrowly limited classes of speech' exist whose 'prevention and punishment . . . have never been thought to raise any Constitutional problem.' These categories 'include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words--those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'"); *Durkin v. Taylor*, 444 F. Supp. 879, 882 (E.D. Va. 1977) (citing *Linn v. United Plant Guard Workers*, 383 U.S. 53 (1966)) ("The protection of the First Amendment varies with the kind, nature and purpose of the speech sought to be protected, and it has long been accepted that some speech may claim no or only partial protection. Thus, there is no right to speak . . . words that are maliciously libelous . . . .").

In *Martinez*, it chose not to do so, and other courts have done the same. As such, the Court is not persuaded by Defendants' argument.

For these reasons, the Court **FINDS** Magistrate Judge VanDervort's analysis persuasive and **OVERRULES** Defendants' objection.

## IV. CONCLUSION

Accordingly, the Court **ADOPTS** the PF&R [Docket 63], **OVERRULES** the parties' objections [Docket 67 and Docket 73], and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss [Docket 35]. Specifically, the Court **GRANTS** Defendants' Motion to Dismiss Defendant McBride, **GRANTS** Defendants' Motion to Dismiss Plaintiff's Right to Privacy Claim, and **DENIES** Defendants' Motion to Dismiss as to all other Defendants and claims.

The Clerk is **DIRECTED** to **TERMINATE** Defendant McBride and **REFER** this matter back to Magistrate Judge VanDervort for further proceedings, except for Plaintiff's currently pending Motion for Summary Judgment [Docket 71]. Finally, the Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record, Plaintiff, *pro se*, and Magistrate Judge VanDervort.

                                      ENTER:       June 26, 2008

                                      THOMAS E. JOHNSTON
                                      UNITED STATES DISTRICT JUDGE